

ENTERED
06/12/2009

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| ELISEO SANCHEZ; dba ALL FENCE § | CASE NO: 08-34781 | |
| COMPANY, INC., *et al* § | | |
|     Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| MASTER-HALCO, INC. § | | |
|     Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 08-3431 | |
| § | | |
| ELISEO SANCHEZ, *et al* § | | |
|     Defendant(s) § | | |

**MEMORANDUM OPINION**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

    In this adversary proceeding, plaintiff Master-Halco, Inc. ("Master-Halco") alleges (i) that Debtors Eliseo Sanchez ("Mr. Sanchez") and Olegaria Sanchez ("Mrs. Sanchez") are indebted to Master-Halco in the principal amount of $115,090.31, (ii) that the debt is not dischargeable in chapter 7 by application of 11 U.S.C. § 523(a)(4), and (iii) that Debtors should be denied discharge of all of their debts. For reasons set forth below, and by separate judgment entered concurrently with this memorandum, the court concludes (i) that Debtors are indebted to Master-Halco as alleged, (ii) that Mr. Sanchez's debt is not dischargeable, and (iii) that both Debtors are denied a discharge.

I.  FACTS

    The parties stipulated to the following facts in the Joint Pretrial Order (Document #15).

    A.  Background

    Debtors wholly owned All Fence Company, Inc. ("All Fence"),[1] a company that built fences on residential and commercial real estate properties.[2] In mid-2004, All Fence entered into

---

[1] Eliseo Sanchez was the President of All Fence for twenty years. His wife, Olegaria Sanchez, owned a 50% stake in All Fence and served as its secretary for a time in 2005. She testified that her secretarial duties included making payments to subcontractors and suppliers pursuant to her husband's instructions.

[2] At trial Mr. Sanchez testified that All Fence operated primarily on a contract system. It would obtain a project, procure the materials needed for the project from a fence component supply company, and then hire an outside contractor to do the work. The client would pay All Fence for the job, and upon completion of the job it would pay its suppliers and subcontractors using the client's payment. All Fence charged $9.00/foot of fencing. All Fence's expenses were $8.20/foot of fencing, which left All Fence $0.80 of profit/foot of fencing.

a credit agreement (the "Agreement") with Master-Halco, a supplier of fence components, materials, supplies, and related equipment ("Goods").[3]  Under the Agreement (with increases in credit limits over time) Master-Halco provided All Fence with a $120,000 line of credit for the purchase of Goods. All Fence eventually drew on its credit line for $115,090.31 of Goods.  All Fence made no payments to Master-Halco after September 17, 2007.

In March 2008, Master-Halco filed a lawsuit in state court against All Fence and Mr. Sanchez. During discovery, Master-Halco requested production of All Fence and Mr. Sanchez documents relating to any Goods that All Fence had purchased on credit from Master-Halco.[4] All Fence and Mr. Sanchez both replied that despite a diligent search, they could not produce the documents.[5]

    B. Bankruptcy Cases and Bankruptcy Schedules

        1. Bankruptcy Petitions

On July 29, 2008, Debtors filed a voluntary petition commencing a case under chapter 7 of the Bankruptcy Code.[6] Shortly thereafter, Mr. Sanchez, as an officer of All Fence, filed a voluntary petition commencing a case for All Fence under chapter 7.[7]

        2. Debtors Statements in their Bankruptcy Schedules

On page 4 of Bankruptcy Schedule F,[8] Mr. and Mrs. Sanchez listed Master-Halco as a creditor holding a claim in the amount of $118,000.  The claim is listed as a joint claim against both Mr. and Mrs. Sanchez, and the claim is not designated as contingent, unliquidated or disputed.[9] Debtors have amended their schedules three times, but have not re-characterized Master-Halco's claim.[10] In stipulation "AA" in the pretrial order, Defendants stipulated that they listed Master-Halco as a creditor.  Nowhere does Mrs. Sanchez deny that she is obligated to Master-Halco on the claim.  She simply argues that the debt is dischargeable.

---

[3] Debtors had similar credit agreements with other fence supply companies, including Nova, Pruett Fence Co., and Jamieson Manufacturing Co.

[4] Specifically, the request was for "Any AND All Documents Relating To The Construction Projects on which Defendant Used OR Plan to Use the Products Purchased from Plaintiff, Including but NOT limited to, Defendant's Contracts with Its Customer(s), Defendant's Contract(s) AND Purchased Order(s) with Supplier(s) AND Laborer(s) Supplying Other Materials OR Labor for the Projects, AND the Payment(s) Received by Defendant(s) on the Project(s)."

[5] Debtors made the same response to the same request from Master-Halco in this adversary proceeding. All Fence eventually delivered ninety days worth of bank statements and a copy of its 2006 federal income tax return to Mr. Askanase, the chapter 7 trustee. Currently, these are the only financial documents All Fence has produced.

[6] *In re* Eliseo Sanchez and Olegaria Sanchez, Case No. 08-34781 (Bankr. S.D. Tex. July 29, 2008).

[7] *In re* All Fence Company, Inc., Case. No. 08-35508 (Bankr. S.D. Tex. Aug. 26, 2008).

[8] Docket # 1, Case No. 08-34781.

[9] The $118,000 figure is the $115,090.31 plus interest at 18% per annum.

[10] Debtors' first amended schedules were filed simultaneously with the bankruptcy petition (Document #2). Debtors' second amended schedules were filed on November 11, 2008 (Document #21). Debtors' third amended schedules were filed on March 9, 2009 (Document #40).

In their initial bankruptcy schedules, Debtors did not disclose ownership of Sanchez Mexico Rental Store, Inc. ("SMR"), a company that Mrs. Sanchez owned and operated.[11] Amendments to the schedules listed SMR as joint property with a value of "$0.00". Third amended schedules continue to list the value of the property at "$0.00", but Mrs. Sanchez testified at trial that in addition to $6,000 of party/playground equipment, SMR owned a pickup truck and an Isuzu vehicle. Mrs. Sanchez further testified that SMR earned about $100,000/year in gross revenues, that she took home about $2,000/month from SMR in 2007, and that she currently takes home about $600/month from SMR. She listed SMR's expenses as two additional employees, SMR's Yellow Pages listing, additional advertising for SMR, and rent of $900/month. The Court concludes that SMR has substantial value.

## II.  THE LEGAL CONTENTIONS

Master-Halco commenced this adversary proceeding to deny discharge of its claim under 11 U.S.C. § 523(a)(4). In addition, Master-Halco alleges that none of the Debtors' obligations are dischargeable in bankruptcy under authority of 11 U.S.C. §§ 727(a)(2)-(a)(5).

Debtors deny all of Master-Halco's allegations.

## III. CONCLUSIONS OF LAW

A.  The Debt to Master-Halco

As set out in more detail above, Debtor's sworn bankruptcy schedules list a joint, undisputed, liquidated, non-contingent debt to Master-Halco for $118,000. Neither Debtor disputes that debt in the pretrial order, although Mrs. Sanchez argues that the debt is dischargeable.

The evidence at trial indicated that the contract to purchase material was a contract between Master-Halco and All Fence. There is no allegation or evidence that Debtors personally guaranteed the debt. It is not clear what legal analysis Debtors' counsel had in mind when he judicially confessed that Master-Halco had a claim against his clients. The two that come to mind most quickly are (i) alter ego, and (ii) liability under Chapter 162 of the Texas Property Code. The distinction is important because the extent of liability would be different. If All Fence is the alter ego of Mr. and Mrs. Sanchez, then Mr. and Mrs. Sanchez are liable for the entire debt to Master-Halco. If Mr. and Mrs. Sanchez are not personally liable on the All Fence debt, but are held liable for misappropriation of trust funds under the Texas Property Code, then logically they may not be liable for the entire debt, but either of them would only be liable for the amount of funds that he or she misappropriated.[12]

---

[11] SMR rents party supplies and party/playground equipment, such as moonwalks and dunk tanks.

[12] The burden of proof and the extent of liability are directly affected. For example, if a contractor purchased $50,000 of materials for a construction job, and if the customer only paid the contractor $20,000, then it would seem that the contractor could not be liable to the materialman for more than $20,000, the total amount of trust funds received. And if the contractor paid the $20,000 to the laborers on the job (who are also trust beneficiaries) it would

Master-Halco presented substantial evidence that All Fence failed to keep separate records and books of account and failed to maintain records. There was no evidence, and not even any argument from Debtors, that they were not liable for all of All Fence's debt to Master-Halco; Debtors judicially confessed that they were.[13] Therefore, the Court finds that All Fence is the alter ego of Mr. and Mrs. Sanchez, and they are liable for its debt to Master-Halco.

B. Dischargeability of the Debt to Master-Halco

Master-Halco alleges that its $118,000 debt is not dischargeable under 11 U.S.C. § 523(a)(4) because Debtors engaged in fraud or defalcation while acting in a fiduciary capacity. Master-Halco alleges that Debtors were Chapter 162 trustees for Master-Halco and that Debtors engaged in wrongful conduct under Chapter 162.

*The Sanchez Relationship Under TEX. PROP. CODE § 162*

Section 162.001, 162,002, and 162.003, in pertinent part, state:

> "Construction payments are trust funds under this chapter if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state."

> "A contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds."

> "An artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or who furnishes labor or material for the construction or repair of an improvement on specific real property in this state is a beneficiary of any trust funds paid or received in connection with the improvement."[14]

Mr. Sanchez falls squarely within § 162.002, making him a trustee to Master-Halco. He owned and operated All Fence, he received trust fund payments through it, and he exercised control and direction of those trust funds.

Mrs. Sanchez is not a trustee under § 162.002. She owned a 50% interest in All Fence, but she testified at trial that her only involvement in management of the company was a short

---

seem that the officers of the contractor are arguably not liable to the materialman at all because all trust funds were paid to trust beneficiaries. In a suit on the construction trust fund statute, the materialman would be required to prove the amount of trust funds improperly diverted. But if the contractor is the alter ego of its owner/officers, then those owner/officers are personally liable for the entirety of the alter ego's debts.

[13] The judicial confession (because it includes $3,000 of interest, and not just the principal amount of the purchases from Master-Halco) also supports the conclusion that Debtors were confessing the alter ego nature of All Fence.

[14] Tex. Prop. Code §§ 162.001-162.003 (Vernon 2009).

stint as its secretary in 2005. She made payments to subcontractors and suppliers at that time, but that was prior to the events relevant to this opinion. Mrs. Sanchez did not exercise the relevant control or direction in 2007 that is essential to application of § 162.002. Because the alleged misapplication of funds took place at some point during 2007, and because there is no evidence that Mrs. Sanchez has been anything more than an All Fence stockholder since 2005, the Court finds that Mrs. Sanchez's debt to Master-Halco would be dischargeable if she were to receive a discharge.[15]

*Not All Defalcations by a Fiduciary are Non-dischargeable*

Section 523(a)(4) requires more than simply the existence of a fiduciary relationship under state law.[16] Federal law determines whether that relationship, and the conduct while in that relationship, results in non-dischargeability under § 523(a)(4).[17] While Chapter 162 of the Texas Property Code creates a fiduciary relationship,[18] the extent of that fiduciary relationship is not a strict trust.[19] A creditor must show that a debtor engaged in wrongful conduct under Chapter 162 for a court to find a breach of fiduciary duty to which § 523(a)(4) would apply.[20] One definitive test is § 162.032, which makes a trustee's misapplication of trust funds totaling $500 or more a criminal offense.[21] From the evidence in this case, it appears that more than $500 was misapplied. A creditor could also demonstrate the relevant standard by proving knowledge or intent. A trustee misapplies trust funds when he "knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds."[22] Intent to defraud exists when a trustee "retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds."[23] To successfully assert § 523(a)(4) against Mr. Sanchez, Master-Halco must prove by a preponderance of evidence[24] that Mr. Sanchez "misapplied the funds by 'intentionally or knowingly or with intent to defraud, directly or indirectly retain[ing], using, disbursing, or otherwise divert[ing] the trust funds without first fully

---

[15] However, for reasons set forth below, the Court concludes that neither Mr. nor Mrs. Sanchez is entitled to a discharge.

[16] Consol. Elec. Distribs., Inc. v. Cook (*In re* Cook), 2006 U.S. Dist. LEXIS 10508, *9 (S.D. Tex. 2006) (citing Texas Lottery Comm'n v. Tran (*In re* Tran), 151 F.3d 339, 342 (5th Cir. 1998)).

[17] *Id.* (citing *In re* Tran, 151 F.3d at 343).

[18] *See*, *e.g.*, Cunningham v. T & R Demolition, Inc. (*In re* ML & Assocs.), 301 B.R. 195, 199 (Bankr. N.D. Tex. 2003) ("Section 162.001 makes construction payments . . . trust funds, albeit with limited fiduciary duties required of the trustee.").

[19] *In re* Cook, 2006 U.S. Dist. LEXIS 10508 at *10 (S.D. Tex. 2006).

[20] Foxworth-Galbraith Lumber Co. v. Dissmore (*In re* Dissmore), 2004 Bankr. LEXIS 2401, *12 (Bankr. N.D. Tex. Oct. 25, 2004) (citing *In re* Tran, 151 F.3d at 344).

[21] Tex. Prop. Code §§ 162.032(a)-(b) (Vernon 2009). *See also In re* Dissmore, 2004 Bankr. LEXIS 2401 at *12 (citing *In re* Tran, 151 F.3d at 344 ("Because misapplication of trust funds under [chapter 162] is subject to criminal penalties, there can be no question that any misapplication of the [trust funds] by Defendants would constitute 'wrongful conduct' and create a fiduciary duty subject to the dischargeability exceptions of Code section 523(a)(4).").

[22] Tex. Prop. Code § 162.031(a) (Vernon 2009).

[23] *Id.* at § 162.005(1)(A).

[24] *See* Coburn Co. of Beaumont v. Nicholas (*In re* Nicholas), 956 F.2d 110, 114 (5th Cir. 1992) (noting a preponderance of evidence standard for proving a § 523(a)(4) exception to discharge).

paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds.'"[25]

Direct evidence of intent is rarely available, and intent can be inferred. All Fence and Mr. Sanchez's financial records are nearly nonexistent. The only financial records that Debtors (or All Fence) could produce in this case consist of ninety days of All Fence's bank statements and a copy of its 2006 federal income tax return. It is stipulated that All Fence purchased over $115,000 of Goods from Master-Halco, and All Fence listed only two receivables with a combined value of $32,249 in its Schedule B filing. All Fence/Sanchez apparently used all of the Goods in the construction contract. None of the Goods are listed in All Fence's bankruptcy schedules. Mr. Sanchez testified that All Fence's customers paid the entire price of the construction contracts and that All Fence made a profit on its contracts. All Fence listed only two receivables ($32,249) in its bankruptcy schedules. Therefore, the Court concludes that a preponderance of the evidence suggests that All Fence received enough money to pay for the materials and other costs of construction, but Mr. Sanchez disbursed the money for other purposes, which Mr. Sanchez cannot (or did not) explain or document.

Debtors gave no plausible alternative version of events. Master-Halco has met its burden of proving by a preponderance of evidence that Mr. Sanchez "misapplied the funds by 'intentionally or knowingly or with intent to defraud, directly or indirectly retain[ing], using, disbursing, or otherwise divert[ing] the trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds.'"[26] Accordingly, the court finds Mr. Sanchez's debt to Master-Halco is not dischargeable under § 523(a)(4) of the Bankruptcy Code.

C. Debtors' Discharge in Bankruptcy

1. Should Debtors Be Denied Discharge in Bankruptcy Under § 727(a)?

In addition to its § 523(a)(4) claim, Master-Halco alleges that the court should deny Debtors' discharge in bankruptcy under 11 U.S.C. § 727, specifically §§ 727(a)(2)-(a)(5).

*§ 727(a)(2)*

Master-Halco alleged claims under §§ 727(a)(2)(A) and (a)(2)(B) in its original complaint (Document #1).[27] However, Master-Halco abandoned the § 727(a)(2) allegations on the record at trial.

---

[25] *In re* Dissmore, 2004 Bankr. LEXIS 2401 at *13.
[26] *Id.*
[27] Sections 727(a)(2)(A) and (a)(2)(B) instruct the bankruptcy court not to grant a debtor a discharge if:

*§ 727 (a)(3)*

Master-Halco alleges that Debtors have "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which [Debtors'] financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."[28] To prevent Debtors' discharge under §727(a)(3), Master-Halco must show either:

-- a failure by the debtor to keep or preserve any recorded information, including books, documents, records and papers, or
-- an act of destruction, mutilation, falsification or concealment of any recorded information including books, documents, records and papers by the debtor or someone acting for the debtor

and that by failure to keep such books or records or by the act complained of it is impossible to ascertain the financial condition and material business transactions of the debtor.[29]

It is undisputed from the record that Debtors failed to keep or preserve any recorded information that would allow anyone to ascertain Debtors' financial condition and their material business transactions. The only information Debtors submitted before trial was ninety days of All Fence's bank statements and a copy of All Fence's 2006 federal income tax return. These do not constitute books, documents, records, or papers, and there is simply no way to ascertain Debtors' financial condition and business transactions from meager All Fence records and without any sort of records whatsoever from Debtors. Master-Halco has met its burden of proving § 727(a)(3). Accordingly, the court will grant Master-Halco's objection to Debtors' discharge.

---

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
(A) property of the debtor, within one year before the date of the filing of the petition; or
(B) property of the estate, after the date of the filing of the petition.
11 U.S.C. §§ 727 (a)(2)(A), (a)(2)(B) (2006).
[28] 11 U.S.C. § 727(a)(3) (2006).
[29] 6 Collier on Bankruptcy, 15th Ed. Rev. P 727.03 (2008) (citations omitted).

*§ 727(a)(4)(A)*

Master-Halco next alleges that Debtors knowingly and fraudulently, in connection with the bankruptcy schedules filed this case, made a false oath or account. According to *Collier on Bankruptcy*:

> The false oath must have related to a material matter. The subject matter of a false oath is material and warrants a denial of discharge if it is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property . . . .
>
> The false oath that is a sufficient ground for denying a discharge may consist of (1) a false statement or omission in the debtor's schedules . . . .
>
> A common instance of "false oath" is when a debtor declares that the schedule of property is "'true and correct" and it appears that the debtor has knowingly and fraudulently omitted assets from it.[30]

Master-Halco alleges that Debtors made a false oath in their schedules because Debtors listed the value of SMR as "$0.00", despite SMR having assets. Based upon Mrs. Sanchez's testimony, SMR does have assets, and is probably profitable.[31] As the principal of SMR, Mrs. Sanchez certainly knew these facts when she and her husband filed their bankruptcy schedules. The omission of SMR's assets on Debtors' schedules was material because it related to Debtors' business transactions and concerned the discovery of assets, business dealings, or the existence or disposition of Debtors' property. The court finds that Master-Halco has met its burden of proving § 727(a)(4). Accordingly, the court will grant Master-Halco's objection to Debtors' discharge.

*§ 727(a)(5)*

Finally, Master-Halco alleges that under § 727(a)(5) Debtors have failed, or will fail, to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the Debtors' liabilities. This claim suffers from the same deficiency as Master-Halco's § 523(a)(4) claim: All Fence is the entity that lost the assets, but All Fence is not a party to this proceeding. Therefore, Master-Halco is unable to assert a § 727(a)(5) claim against Debtors.

## IV. DEFENDANTS' CONTENTIONS

In the pretrial order, Defendant/Debtors list two contentions:

A. Mrs. Sanchez Is not a Fiduciary under the Texas Property Code

---

[30] 6 Collier on Bankruptcy, 15th Ed. Rev. P 727.04 (2008) (citations omitted).
[31] *See supra* n.12.

The Court agrees, and has so ruled.

B. The Texas Property Code Trust Provisions Only Apply to Contracts Exceeding $5,000

Defendants challenged the applicability of Chapter 162, by providing testimony from Mr. Sanchez that the residential improvement contracts were neither written nor valued at greater than $5,000.[32] While the statute does specify that when there is a written contract valued at greater than $5,000 the trustee is obligated to maintain a dedicated bank account for the trust funds, the statute does not base the trustee's fiduciary duty on the amount of the contract or on formalized agreements between homeowner and contractor.

## V. AMOUNT OF DEBT

Eliseo and Olegaria Sanchez owe Master-Halco, Inc. $115,090.31 in principal, $21,808.13 in interest accrued to date of petition, $35,000 in attorney fees as of this date, plus post-judgment interest at the legal rate.

## VI. CONCLUSION

Based upon the foregoing, the court holds that: (i) Master-Halco's $118,000 debt is not dischargeable with respect to Mr. Sanchez; and (ii) Debtors' discharge in bankruptcy is denied because Debtors satisfy the criteria of both § 727(a)(3) and § 727(a)(4).

SIGNED 06/12/2009.

_____
Wesley W. Steen
United States Bankruptcy Judge

---

[32] Tex. Prop. Code Ann. §162.006 (Vernon 2009).